UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

INEZ M. CONTE,                                              Case No.: 11-77836-ast
                                                           Chapter 13

                              Debtor.
----------------------------------------------------------X

### DECISION AND ORDER DENYING PRIORITY CLAIM STATUS
### AND DESIGNATING CLAIM UNDER § 523(a)(15)

This Court is called upon again to resolve a dispute between the debtor, Inez Conte (the

"Debtor"), and her former spouse, John Conte ("Mr. Conte"), regarding the proper status of Mr.

Conte's $84,049 proof of claim filed in Debtor's bankruptcy case.

In a prior Decision and Order published on May 21, 2012, this Court granted Debtor's

earlier motion to avoid Mr. Conte's judgment lien and to treat his claim as an unsecured claim.

*In re Conte*, 2012 WL 1865423 (Bankr. E.D.N.Y. May 21, 2012) (the "May 21 Decision and

Order").  After the Court announced its ruling at a ruling conference on May 10, 2012, but prior to

publication of the written decision, Mr. Conte filed proof of claim number 2-2 as a priority claim

under 11 U.S.C. § 507(a)(1)(A), asserting that the claim represents a domestic support obligation

("DSO") as defined in § 101(14A) ("Claim 2-2").  On June 14, 2012, Debtor filed the instant

motion (the "Motion") [dkt item 42], seeking to disallow and expunge Claim 2-2.

For the reasons set forth below, this Court holds that Claim 2-2 does not satisfy the

definition of a DSO in § 101(14A) and is, therefore, not entitled to priority status under

§ 507(a)(1)(A) or nondischargeable status under § 523(a)(5), but that Claim 2-2 constitutes a

claim under § 523(a)(15), which is dischargeable in this Chapter 13 case.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(2)(A), (B), and (O), and the Standing Order of Reference in effect in the Eastern District

of New York dated August 28, 1986.

The following constitutes the Court's findings of facts and conclusions of law to the extent

Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so requires.

FED. R. BANKR. P. 7052.

## BACKGROUND

The facts of this case are discussed in further detail in the May 21 Decision and Order.

*Conte*, 2012 WL 1865423, at *1.  By way of summary, well prior to the commencement of this

case, Debtor and Mr. Conte had been married, but the couple separated in 2008.  On July 17,

2008, the parties executed a stipulation of settlement to divide the marital assets (the

"Stipulation") [dkt item 23-1], under which Mr. Conte executed a deed of his one-half ownership

interest in the parties' former marital residence (the "Residence") in exchange for $144,009,

which the parties agreed would be paid as follows:  Debtor would pay Mr. Conte $60,000 within

sixty days of signing the Stipulation, and the remaining $84,009 upon the earlier of August 31,

2010, or a sale of the Residence; this remaining balance would be secured by a confession of

judgment, but not by a consensual lien.

On or about August 8, 2008, Debtor paid Mr. Conte the first $60,000.  Shortly thereafter,

and as previously agreed, on August 19, 2008, Debtor executed a confession of judgment in favor

of Mr. Conte in the amount of $84,009, the remaining balance due under the Stipulation.

On January 9, 2009, the divorce decree terminating the parties' marriage was entered.

After the deadline to pay the remaining balance due under the Stipulation had passed,

Debtor and Mr. Conte entered into an amended stipulation that extended Debtor's time to pay

until March 1, 2011.  However, Mr. Conte never received the remaining $84,009 balance, and on

August 18, 2011, Mr. Conte recorded the confession of judgment signed by Debtor.

On November 1, 2011, Debtor commenced the instant Chapter 13 bankruptcy case.

On January 10, 2012, Mr. Conte timely filed proof of claim 2-1 asserting a secured claim

of $84,049[1] based upon the judgment lien created by his recording of the confession of judgment;

that same day, Debtor filed the motion objecting to Mr. Conte's claim and seeking to avoid his

nonconsensual lien as impairing her homestead exemption pursuant to 11 U.S.C. § 522(f)(1)(A).

[dkt item 19]

In the May 21 Decision and Order, this Court concluded that because Mr. Conte did not

record the confession of judgment until well after Debtor obtained title to the Residence through

the divorce proceedings, Mr. Conte's judgment lien could be avoided pursuant to § 522(f)(1)(A)

as a nonconsensual lien impairing Debtor's homestead exemption.  Importantly, in reaching this

conclusion, this Court specifically noted that "Mr. Conte does not assert that the Judgment Lien

secures a domestic support obligation as defined under § 101(14A), which would be a

nondischargeable debt under § 523(a)(5), rendering § 522(f) is inapplicable by virtue of

§ 522(f)(1)(A)."  *Id.*, at *2.  The May 21 Decision and Order further provided that Mr. Conte's

claim "shall be treated as a general unsecured claim and shall be paid through the Debtor's

Chapter 13 plan."  *Id.*, at *5.

## THE PARTIES' ARGUMENTS

In the instant Motion, Debtor objects to Mr. Conte's assertion that he holds a priority,

nondischargeable DSO.  Debtor argues that the parties' intended the Stipulation to effect an

---

[1]  The $40 difference between the $84,009 remaining due under the Stipulation and the amount of Mr. Conte's Claim 2-2 represents statutory costs and disbursements. *See Conte*, 2012 WL 1865423, at *5 n.2, citing dkt item 19, Exhibit "C".

3

equitable distribution of the parties' marital assets and not to create a domestic support obligation. Motion at ¶ 12. The Motion also points out that Mr. Conte's right to payment from the sale of the marital residence is contained within a portion of the Stipulation labeled "Article I Final Disposition (Equitable Distribution and Child Support): Acknowledgement of Rights and Elections." *Id.* Further, Debtor asserts that a separate provision of the Stipulation, Article V, entitled "Spousal Support and Maintenance," contains a waiver of any DSO claim; this provision states that "The Husband [Mr. Conte] represents that he is capable of supporting himself in his accustomed standard of living now and in the future, and the Husband waives any provision for his support and maintenance from the Wife [Debtor] to the fullest extent permitted by the law of the State of New York." *Id.* In addition, the Motion argues that this Court's May 21 Decision and Order preclusively found that Mr. Conte holds a "general unsecured claim." *Id.* at ¶ 41.

Mr. Conte filed an Objection to the Motion on June 28, 2012 (the "Objection") [dkt item 44], arguing that, notwithstanding their contractual agreements, the parties' intended that the payments from Debtor to Mr. Conte for his one-half interest in the marital residence were for Mr. Conte's maintenance and support. Specifically, the Objection states that "at the time the Stipulation of Settlement was executed, the Creditor had been unemployed since 2005 and was on a fixed income, collecting only $13,104 from disability insurance annually. In contrast, the Debtor was employed, earning approximately $10,802 per year. Upon information and belief, it was anticipated that the Debtor would not only continue to be employed, but that her income would rise and be sufficient to cover the carrying costs associated with the prior marital residence." Objection at ¶ 15. The Objection adds that "In the alternative, it is submitted that this debt clearly falls within section 523(a)(15) . . . ." *Id.* at ¶ 22. In addition, Mr. Conte asserts that

the Court's May 21 Decision and Order did not preclusively find that Mr. Conte does not hold a priority DSO claim. *Id.* at ¶ 32.

On July 5, 2012, Debtor filed a reply (the "Reply") [dkt item 45], in which she stated that "The actual language of the agreement, its substance and the Debtor's affirmation evidences an intention of the parties do nothing more than end a marriage, divide its assets among the parties, and to effectuate a property distribution."  Reply at ¶ 16.

A hearing on the Motion was held on August 9, 2012 (the "Hearing").  At the conclusion of the Hearing, the Court authorized the parties to file supplemental briefing by September 6, 2012, including on the question of whether this Court's May 21 Decision and Order precluded treatment of Mr. Conte's claim as a priority DSO claim; however, no further briefing was filed by either party.

## DISCUSSION

Mr. Conte asserts that Claim 2-2 is entitled to priority status because it represents a "Domestic support obligation[] under 11 U.S.C. § 507(a)(A) or (a)(l )(B)."  Section 507(a) of the Bankruptcy Code grants a first priority to "[a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse [or] former spouse . . . ."  11 U.S.C. § 507(a)(1)(A).

In addition to having priority status, DSO claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).  Section 523 also makes nondischargeble claims owed "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement . . . ."  11 U.S.C. § 523(a)(15); however, by virtue of § 1328(a), § 523(a)(15) claims are dischargeable in

a Chapter 13 case, such as this case.  *See* 11 U.S.C. § 1328(a)(2); *In re Rogowski*, 462 B.R. 435,

439-40 (Bankr. E.D.N.Y. 2011).[2]

The term "domestic support obligation" is defined in § 101(14A).[3]  In this case, the parties

agree that the only element of a DSO in dispute is whether Mr. Conte's claim is "in the nature of

alimony, maintenance, or support".  § 101(14A)(B).

*Preclusion and Law of the Case*

As a preliminary matter, this Court must determine whether Mr. Conte is precluded from

filing a priority DSO claim by this Court's May 21 Decision and Order.  As noted above, the May

21 Decision and Order found that "Mr. Conte does not assert that the Judgment Lien secures a

domestic support obligation as defined under § 101(14A), which would be a nondischargeable

---

[2] Such a claim may, however, be nondischargeable if a case were converted to a chapter other than Chapter 13. *See* 11 U.S.C. § 523(a)(introductory clause); *Rogowski*, 462 B.R. at 440-42.

[3] Section 101(14A) defines a DSO as:

> "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> (A) owed to or recoverable by--
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

debt under § 523(a)(5), rendering § 522(f) is inapplicable by virtue of § 522(f)(1)(A)." *Conte*, 2012 WL 1865423, at *2. The May 21 Decision and Order further provided that Mr. Conte's claim "shall be treated as a general unsecured claim and shall be paid through the Debtor's Chapter 13 plan." *Id.*, at *5. Relying on these conclusions, Debtor argues that this Court has already preclusively determined that Mr. Conte's claim is a general unsecured claim and nothing more. Debtor reaches the correct conclusion, but for the wrong reason.

The May 21 Decision and Order did not preclusively determine that Mr. Conte holds a general unsecured claim as that issue was not squarely before the Court. Rather, the Court ordered that Mr. Conte's claim be treated as a general unsecured claim through Debtor's Chapter 13 plan because Mr. Conte had previously filed a claim purportedly secured by a judgment lien, which lien this Court found Debtor could avoid pursuant to § 522(f). Importantly, in reaching this conclusion, it was necessary for the Court to conclude, as it did, that Mr. Conte was not asserting a DSO claim because a DSO claim "would be a nondischargeable debt under § 523(a)(5), rendering § 522(f) is inapplicable by virtue of § 522(f)(1)(A)." *Conte*, 2012 WL 1865423, at *2.

As a result, the Court's May 21 Decision and Order did not determine that Mr. Conte's claim must be a nondischargeble general unsecured claim; rather, the Court found that because Mr. Conte did not assert a DSO claim, § 522(f)(1)(A)'s prohibition on avoiding nonconsensual liens securing DSOs was rendered inapplicable, and Debtor was able to utilize § 522(f) to avoid Mr. Conte's judgment lien.

The issue here, thus, is not res judicata or preclusion, but law of the case. "Under the law of the case doctrine, a decision on an issue of law made at one stage becomes binding precedent to be followed in subsequent stages of the same litigation." *In re Renz*, 2012 WL 3200874, at *5 (Bankr. E.D.N.Y. Aug. 1, 2012), quoting *In re Kuncman*, 454 B.R. 276, 282 (Bankr. E.D.N.Y.

2011) (internal quotation marks omitted).  Law of the case "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Renz*, 2012 WL 3200874, at *5, quoting *In re Elmasri*, 2010 WL 1544420, at *4 (Bankr. E.D.N.Y. Apr. 19, 2010).

Here, this Court, in a final Decision and Order that was not appealed, determined that § 522(f)(1)(A)'s prohibition against avoiding judgment liens securing DSO claims was inapplicable because Mr. Conte had not asserted a DSO claim, thus enabling Debtor to utilize § 522(f).  If this Court were to now determine that Mr. Conte has a DSO claim, it would necessarily follow that § 522(f) would be inapplicable in this case by virtue of § 522(f)(1)(A), thus effectively reversing this Court's May 21 Decision and Order.  Only after this Court issued its ruling at the May 10 oral ruling conference did Mr. Conte amend his proof of claim to assert for the first time that he holds a priority, nondischargeable DSO claim.  However, Mr. Conte may not now do so and thereby effectively cause this Court to reverse its prior ruling; he does not allege or refer to any change of controlling law, new evidence, or a need to correct a clear error or to prevent manifest injustice.  Accordingly, under the law of the case doctrine, this Court will not revisit its prior ruling that § 522(f) applies to allow Debtor to avoid Mr. Conte's original lien claim.

*Claim 2-2 Is Not a DSO*

Nevertheless, out of an abundance of caution, this Court has examined the merits of Mr. Conte's claim, and concludes that he does not hold a priority DSO claim.  *See Burgos v. Pergament*, 2012 WL 3929953, at *5 (E.D.N.Y. Sept. 10, 2012).

For a claim to constitute a DSO, it must be, among other things, "in the nature of alimony, maintenance or support" and payable to a spouse, former spouse, the debtor's child or such child's parent. 11 U.S.C. § 101(14A)(B); *see Forsdick v. Turgeon*, 812 F.2d 801, 802-04 (2d Cir.1987). "Whether a payment is alimony, maintenance or support within the meaning of section 523(a)(5) is a question of federal bankruptcy law . . . ." *In re Brody*, 3 F.3d 35, 39 (2d Cir. 1993). Courts in the Second Circuit take a broad reading of the phrase "in the nature of support" in dischargeability disputes. *See In re Peters*, 133 B.R. 291, 295 (Bankr. S.D.N.Y. 1991). "[C]ongress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start." *Forsdick*, 812 F.2d at 804. "By virtue of § 523(a)(5), [C]ongress has chosen between two competing interests – those of bankrupts and those of their former spouses and offspring – and it chose in favor of the latter." *Id.* at 802. However, the "overriding" considerations in determining whether a debt is a DSO or a property settlement "are the intent of the parties . . . in fixing the obligation and the purpose of the obligation in light of the parties' circumstances **at that time**." HENRY J. SOMER & MARGARET DEE MC GARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE, 6-30 (2010) (emphasis added). As the Second Circuit has noted, "[u]nder bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5)." *Brody*, 3 F.3d at 38.

Bankruptcy courts in this circuit have developed a non-exhaustive list of factors to consider in ascertaining the parties' intent when determining whether an obligation is a property settlement or a DSO. *See In re Berg*, 167 B.R. 9, 13 (Bankr. E.D.N.Y. 1994). These factors include:

> (1) [W]hether the obligation terminates upon the death or remarriage of either spouse, upon any children reaching majority or upon some other similar event;

> (2) how the obligation is characterized in the parties' settlement agreement or divorce decree, and the context in which it appears; (3) whether the payments appear to balance disparate income between the former spouses; (4) whether the payments are to be made directly to the spouse or to a third party; (5) whether the payment is payable in a lump sum or in installments over time; (6) whether the parties intended to create an obligation of support or to divide marital property; (7) whether an assumption of debt has the effect of providing necessary support to insure that the daily needs of former spouse and any children of the marriage are met; (8) whether an assumption of debt has the effect of providing support necessary to insure a home for the non-debtor spouse and his or her minor children.

*Id.*  A claim arising from equitable distribution or a property settlement is not treated as a DSO. *See In re St. Clair*, 2011 WL 6888369, at *2-3 (Bankr. D.N.J. Dec. 29, 2011) ("In a Chapter 7 proceeding, an equitable distribution obligation is excepted from discharge under 11 U.S.C. § 523(a)(15).  In contrast, a Chapter 13 debtor can discharge such a debt. . . . Thus, any debts in the nature of equitable distribution are subject to a Chapter 13 discharge under § 1328(a)."); *see also In re Clouse*, 446 B.R. 690, 707 n.58 (Bankr. E.D. Pa. 2010); *In re Kennedy*, 442 B.R. 399, 402-03 (Bankr. W.D. Pa. 2010); *In re Uzaldin*, 418 B.R. 166, 171-72 (Bankr. E.D. Va. 2009); *In re Golio*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008).

Applying the eight *Berg* factors to the present case, it is clear that Debtor's obligation under the Stipulation to pay Mr. Conte $144,009 for his one-half ownership interest in the marital residence does not constitute a DSO.  First, Debtor's obligation to Mr. Conte did not terminate upon death, remarriage, or upon their children reaching a certain age; rather, it was tied to the occurrence of the earlier of two specific events: the sale of the Residence or the arrival of August 31, 2010.  In fact, once August 31, 2010 had passed, the parties executed an amended stipulation further extending Debtor's time to pay the remaining balance for another six months.

Second, as highlighted in Debtor's Motion, the labels employed by the parties in their consensual Stipulation evidence an intent to treat the debt as a property settlement and not a DSO. While it is true that the substance, and not the labels, must control the determination of

dischargeability, *see Forsdick*, 812 F.2d at 802; *In re Spong*, 661 F.2d 6, 9 (2d Cir. 1981), the label or characterization given to a payment is "a starting point for the determination of the award's intended function." *In re Phegley*, 443 B.R. 154, 158 (B.A.P. 8th Cir. 2011). Here, the obligation for Debtor to pay Mr. Conte $84,009 is contained in a provision titled "Article I Final Disposition (Equitable Distribution and Child Support): Acknowledgement of Rights and Elections." Motion at ¶ 12. That provision was contained in a Stipulation drafted or reviewed by the parties' attorneys and signed by both parties.

Accordingly, the Court finds the label "Equitable Distribution" used to describe Debtor's obligation to pay Mr. Conte for his one-half ownership interest in the Residence to be instructive in determining the parties' intent about the nature of that obligation. This view is bolstered by the fact that this payment obligation is conspicuously not included in Article V of the Stipulation, titled "Spousal Support and Maintenance." Even further support is found in the language of Article V, which provides that "The Husband [Mr. Conte] represents that he is capable of supporting himself in his accustomed standard of living now and in the future, and the Husband waives any provision for his support and maintenance from the Wife [Debtor] to the fullest extent permitted by the law of the State of New York." The Court interprets this language in the Stipulation as an express waiver by Mr. Conte of any right to support and maintenance and as evidence of both parties' intent as to the nature of the obligation.

Third, as Debtor points out, at the time the Stipulation was signed in July 2008, Mr. Conte's income was actually higher than Debtor's at the time the parties entered into the Stipulation. While Mr. Conte argues that Debtor's income subsequently increased, the relevant inquiry for determining the parties' intent is at the time the Stipulation was executed. Further, Mr. Conte has not put forward any evidence that the parties were aware of any subsequent salary

changes when they signed the Stipulation; in fact, Mr. Conte's assertion is countered by the express waiver of support and maintenance, quoted above, in the Stipulation that he signed.

Considering the fourth and fifth *Berg* factors, the Court notes that the payments were made directly to Mr. Conte, and not a third party. Also, while the Stipulation required Debtor to make the payments over more than two years, the frequently of payments was not monthly, quarterly, or even yearly. Rather, the payments were originally due in two lump sums: $60,000 within 60 days of execution of the Stipulation and the remaining balance on the earlier of sale of the Residence or August 31, 2010.

The sixth factor, "whether the parties intended to create an obligation of support or to divide marital property," encapsulates the entire analysis under the *Berg* factors. When considering the nature and the structure of the transaction, the labels used by the parties in the Stipulation, the presence of an express waiver by Mr. Conte of "support and maintenance," and the amounts and timing of the payments, it is clear to this Court that Debtor's obligation to pay Mr. Conte $144,009 for his one-half ownership interest in the Residence was intended by the parties as a property settlement and not as "in the nature of alimony, maintenance and support."

Finally, in considering the seventh and eighth *Berg* factors, the Court notes that Mr. Conte has not put forward any evidence that Debtor's obligation to purchase his interest in the marital residence had the effect of "providing necessary support to insure that the daily needs of former spouse" or the effect of "providing support necessary to insure a home for the non-debtor spouse." By contrast, and as discussed further in the May 21 Decision and Order, Mr. Conte was not entitled to receive the full amount for his interest in the marital residence until more than two years after the Stipulation was signed.

The Court is not unsympathetic to Mr. Conte's position, particularly in light of the fact that the unpaid balance under the Stipulation is several times Mr. Conte's annual income at the time the Stipulation was executed.  However, in determining whether this unpaid obligation constitutes a DSO or not, the Court must be guided by the intent of the parties at the time the Stipulation was executed.  It is clear to this Court that, in applying the *Berg* factors to the facts of this case, the parties intended the $84,009 payment to be a property settlement and not a DSO at the time they executed the Stipulation, and that intent determines the nature of this claim as not being a DSO.  *Brody*, 3 F.3d at 38.  This Court finds no permissible or persuasive basis to override the parties' intent.

Accordingly, the Court holds that Mr. Conte's claim is not a DSO as defined in 11 U.S.C. § 101(14A).

*Mr. Conte Holds a § 523(a)(15) Claim*

The question becomes, then, whether Mr. Conte holds a claim under § 523(a)(15). Section 523(a)(15) "encompass[es] a range of matrimonial debts, including obligations arising out of property settlement agreements and equitable distribution judgments."  *In re Langman*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012).

The analysis for debts that fall under § 523(a)(15) is different than that of § 523(a)(5).  As the Court in *In re Schweitzer* stated:

> [T]o be excepted from discharge under this provision [§ 523(a)(15)], the debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be the type described in section 523(a)(5), i.e., not a domestic support obligation; and (3) have been incurred in the course of divorce or separation in connection with a separation agreement, divorce decree, or other order of a court.

370 B.R. 145, 150 (Bankr. S.D. Ohio 2007); *see In re Tarone*, 434 B.R. 41, 48 (Bankr. E.D.N.Y. 2010); *see also Bringhurst v. Adams*, 2012 WL 2467084, at *2 (Bankr. E.D. Ky. June 28, 2012)

(holding in a Chapter 7 case that a prepetition state court order directing the debtor to "buy out" his ex-spouse's interest in the marital residence created a nondischargeable obligation under § 523(a)(15)).

The party contesting the dischargeability of a debt has the burden of proving the elements of § 523(a)(15) by a preponderance of the evidence. *Schweitzer*, 370 B.R. at 150 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). In this case, a straightforward application of the elements of § 523(a)(15) demonstrate that Mr. Conte holds a claim under § 523(a)(15). Claim 2-2 represents a debt owned by Debtor to her former spouse, Mr. Conte. This obligation is not a debt under § 523(a)(5), for the reasons stated above. In addition, this debt was incurred by Debtor in connection with a separation agreement, namely the July 17, 2008 Stipulation, that divided the parties' marital assets. Further, Debtor's counsel conceded at the August 9 Hearing that Mr. Conte holds a § 523(a)(15) claim, and Mr. Conte asserted in his Objection that if his claim is not a DSO then it is a claim under § 523(a)(15). Objection at ¶ 32.

Thus, this Court holds that Mr. Conte's claim for the remaining $84,049 arising from the July 2008 Stipulation with Debtor represents a claim under § 523(a)(15).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that for the reasons set forth above, this Court finds that John Conte does not hold a priority domestic support obligation claim, but rather holds a claim arising out of a separation agreement pursuant to 11 U.S.C. § 523(a)(15); and it is therefore

**ORDERED**, that Debtor, Inez Conte's objection [dkt item 42] to John Conte's filed proof of claim number 2-2 is hereby SUSTAINED as provided herein; and it is further

**ORDERED**, that John Conte's filed proof of claim number 2-2 shall not be treated as a priority claim pursuant to 11 U.S.C. § 507(a)(1)(A), but shall be treated as an unsecured claim through Debtor's Chapter 13 plan, and shall be dischargeable to the extent provided in 11 U.S.C. §§ 523(a)(5) and 1328(a).



Dated: October 3, 2012
    Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**